# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ETHAN W. MOORE,

    Plaintiff,

  v.                                          Case No. 15-CV-936

MATTHEW D. PETERSON, UNITED
HOSPITAL SYSTEM, JANE AND JOHN
DOE DOCTORS, NURSES, EMPLOYEES,
STAFF IN THEIR INDIVIDUAL AND
OFFICIAL CAPACITY, JOINTLY AND
SEVERALLY, RICK SCHMIDT
- ADMINISTRATOR,

    Defendants.

## DECISION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Ethan W. Moore brings this lawsuit alleging that the defendants—Matthew D. Peterson, United Hospital System, Jane and John Doe Doctors, Nurses, Employees, Staff in their individual and official capacity, jointly and severally, and Rick Schmidt—violated his Fourth Amendment and Eighth Amendment rights by conducting a blood draw without a warrant. Both Moore and the defendants have moved for summary judgment. (Docket # 35, Docket # 37.) For the reasons that follow, Moore's motion is denied and the defendants' motion is granted and the case will be dismissed. Additionally, Moore's motion to amend his complaint is denied, as is his motion to appoint counsel. His motion to proceed *in forma pauperis* is denied as moot.

# SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc.,Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## FACTS

To begin, I note that Moore has failed to comply with Civil L.R. 56 (E.D. Wis.), both by failing to submit his own proposed findings of fact pursuant to Rule 56(b)(1)(C) and by failing to respond to the defendants' proposed findings of fact. While I could dismiss his motion for summary judgment on the basis of his failure to file his own proposed findings of fact, Civil L.R. 56(b)(1)(C)(iii), I will allow his motion to go forward. That said, all of the defendants' proposed findings of fact will be taken as true because Moore failed to respond to them.[1]

Moore was pulled over by Pleasant Prairie Police Officer Aaron D. Schaffer in the early morning of August 3, 2013. Officer Schaffer suspected, based on Moore's driving, that Moore was intoxicated. Once Moore was stopped, Officer Schaffer administered a standardized field sobriety test. Another officer, Carolyn Bugalecki, also arrived on the scene to assist Officer Schaffer. Moore agreed to submit to a preliminary breath test, which returned a result of .189. Officer Schaffer then read Moore the "Informing the Accused" form, and Moore stated that he would not voluntarily submit to an evidentiary blood draw. Schaffer completed an Affidavit for Search Warrant for Blood Draw. He gave the form to Officer Bugalecki to have it notarized and reviewed by a judge, and he proceeded to escort Moore to Kenosha Memorial Hospital.

Officer Bugalecki stayed on scene until Moore's car was towed, and then she drove the warrant paperwork to the Kenosha Sheriff's Department to have the warrant affidavit notarized by a sergeant. Once the sergeant notarized the affidavit, Officer Bugalecki took it

---

[1] I also note that the defendants complied with Civil L.R. 56(a) (E.D. Wis) by providing the requisite text of the local and federal rules, as well including a "short and plain statement" that explains that any factual assertion will be accepted by the court in the event Moore fails to submit his own "affidavit, declaration, or other admissible evidence contradicting the factual assertion."

3

back to the Pleasant Prairie Police Department where Lieutenant Paul D. Merik scanned the affidavit into an email, which he sent to Judge David M. Bastianelli who was serving as the "on call" judge in Kenosha County. After receiving the signed and notarized affidavit at 3:00 a.m., he swore in Officer Bugalecki over the telephone and examined the affidavit. Judge Bastianelli agreed that a warrant should be issued, and he filled out and signed the "Search Warrant for Blood Draw," which he emailed back to Lieutenant Marik at 3:10 a.m. The time indicated on the warrant reads "3:40," but it should read "3:04." Once Lieutenant Marik learned that Judge Bustianelli signed the warrant, he, in the presence of Officer Bugalecki, called Officer Schaffer to let him know that the warrant had been signed by the judge. The phlebotomist, Mark Peterson, having been informed that a warrant had issued, took the first blood draw at 3:33 a.m. and a second draw at 4:38 a.m.

## ANALYSIS

Moore alleges that the blood draw, the first of which was taken at 3:33 a.m., violated his Fourth and Eighth Amendment rights because the time on the warrant reads 3:40 a.m. The defendants make several arguments as to why they are entitled to summary judgment: because Moore's lawsuit is based upon a demonstrably erroneous assumption of fact—specifically, the time of the issuance of the warrant; that the suit should be dismissed because the plaintiffs are private, not state, actors; that even if Peterson was acting under color of state law, he would be entitled to qualified immunity; that any claims against Rick Schmidt and UHS are insufficient to establish a constitutional violation as a matter of law; and that Moore's blood draw claim is insufficient to establish an Eighth Amendment violation.

As the defendants note, Moore's lawsuit rests on his belief that the judge did not sign the warrant for the blood draw until 3:40 a.m., seven minutes after the first blood draw. Indeed, in his complaint, he concedes that that if the warrant was signed prior to the blood draw, there would be no constitutional violation.[2] (Compl., Docket # 1 at 10.) Moore is correct that time written on the warrant is "3:40." (Exh. B to Affidavit of Officer Aaron D. Schaffer ("Schaffer Aff."), Docket # 41-2; Exh. F to Affidavit of Lieutenant Paul D. Marik ("Marik Aff."), Docket # 42-6; Exh. C to Affidavit of Judge David M. Bastianelli ("Bastianelli Aff.").) However, the defendants have presented other evidence that the warrant was signed at 3:04 am, rather than 3:40, specifically:

- The sworn affidavit of Officer Aaron D. Schaffer, who avers that he was told via telephone at 3:16 a.m. that the warrant had been signed, and that Officer Bugalecki presented him with a hard copy of the signed search warrant, a copy of which was given to Moore. (Schaffer Aff., Docket # 41 at ¶¶ 12-13.)

- The sworn affidavit of Lieutenant Paul D. Marik, who avers that he emailed a scan of the signed and notarized "Affidavit for Search Warrant for Blood Draw" at 3:00 a.m. He avers that he received via email a copy of the signed search warrant at 3:10 a.m. from Judge Bastianelli, and that he then called Officer Schaffer to advise him that the warrant had been signed. (Marik Aff., Docket # 42 at ¶¶ 12-17.) A copy of the email sent from Judge Bastianelli to Marik, time stamped at 3:10 a.m., is attached as an exhibit to his affidavit. (Exh. E to Marik Aff., Docket # 42-5.)

- The sworn affidavit of Judge David M. Bastianelli, who avers that he received an email at 3:00 a.m. from Lieutenant Marik, which contained a scan of the "Affidavit for Search Warrant. He further avers that after receiving the affidavit over email, he swore in Officer Bugalecki over the telephone and

---

[2] In the type-written attachment to the *pro se* complaint form, Moore writes: "The illegal blood draw was conducted at 3:33 am on 08-03-2013, had the defendants simply waited an additional 7 minutes this case would not be before the United States District Court for violation of defendants [sic] Fourth Amendment Rights to the United States Constitution."

5

examined her affidavit. He found that the issuance of a warrant was appropriate, and signed the "Search Warrant for Blood Draw," authorizing an OWI blood draw on Moore. Judge Bastianelli further avers that after signing the warrant, he emailed the signed warrant to Lieutenant Marik at 3:10 a.m. (Bastianelli Aff., Docket # 43 at ¶¶ 10-18.) Attached to his affidavit is a true and correct copy of the email he sent to Lieutenant Marik, which shows a time stamp of 3:10 a.m. (Exh. D to Bastianelli Aff., Docket # 43-4.) Judge Bastianelli also avers that he has previously experienced an issue with transposing numbers, and that that is what happened with the warrant in this case: he transposed the "4" and the "0." (Docket # 43 at ¶¶ 19-20.)

- The sworn affidavit of Officer Carolyn A. Bugalecki, who avers that after taking the affidavit to be notarized, she returned to the Pleasant Prairie Police Department, where Lieutenant Marik scanned the affidavit into an email and emailed it to Judge Bastianelli. She further avers that she was sworn in over the phone by Judge Bastianelli, in the presence of Lieutenant Marik, and Judge Bastianelli signed the warrant. Bugalecki avers she was present with Lieutenant Marik when he received the email from Judge Bastianelli that contained the signed search warrant, and Lieutenant Marik contacted Officer Schaffer to let him know that the warrant had been signed by the judge. She then took a hard copy of the warrant to Officer Schaffer at the hospital. (Affidavit of Carolyn A. Bugalecki ("Bugalecki Aff."), Docket # 45 at ¶¶ 11-17.)

Moore, who as I already noted did not respond to the defendants' proposed findings of fact, has offered no evidence to contest the defendants' evidence. As such, there is no genuine dispute over the material fact of when the warrant was actually signed. And because it was signed prior to the time Moore's blood was drawn, he can allege no Fourth Amendment violation on the basis of the blood draw.

Additionally, even if Moore had created a genuine dispute of material fact, he has filed this lawsuit, brought under 42 U.S.C. § 1983, against private actors. In order to support a § 1983 action, the defendants must be "acting under color of state law." *Kramer v. Village of*

*North Fon du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (internal citations omitted); *see also West v. Atkins*, 487 U.S. 42 (1988). Stated differently, the defendants must be "state actors," and to determine whether an individual or an entity is a state actor, a court must find "such a 'close nexus between the State and the challenged action' that the challenged action 'may be fairly treated as that of the State itself.'" *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 827 (7th Cir. 2009) (internal citations omitted). Moore has produced no evidence that Peterson, Schmidt, or United Hospital Systems were employees of the state or otherwise "state actors." While Moore cites *West* as support for his allegation that Peterson, at least, acted under color of state law, *West* is distinguishable. The defendant in *West* was a physician under contract with the State to provide medical services to inmates at a state-prison hospital. 487 U.S. at 44. As the Supreme Court later explained, "[In *West*], the State was constitutionally obligated to provide medical treatment to injured inmates, and the delegation of that traditionally exclusive public function to a private physician gave rise to a finding of state action." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 55 (1999). Here, the defendants had "only an incidental and transitory relationship with the state[] . . . ." *Rodriguez*, 577 F.3d at 827-28. Moore was brought to Kenosha Memorial Hospital to have his blood drawn; there was no other relationship between the hospital and the State. Therefore, Moore has sued private individuals, who are not subject to liability under § 1983.[3]

     I turn now to Moore's Eighth Amendment claim. First, I note that this claim could be dismissed solely because Moore has brought suit against private actors rather than state

---

[3] I note that Moore's "Doe" defendants are also employees of the hospital: doctors, nurses, and staff. Therefore, his naming of Doe defendants does not change the (lack of) relationship between the defendants and the state.

7

actors. But even if Moore brought suit against state actors, the facts are insufficient to support a claim under the Eighth Amendment.

In the final paragraph of his complaint, Moore mentions the Eighth Amendment for the first time, claiming that the blood draw was done forcibly and caused him pain, agony, and grief. Cruel and unusual punishment, which contemplates "'the unnecessary and wanton infliction of pain,' including unnecessary use of force," is prohibited by the Eighth Amendment.[4] *Henderson v. Belfueil*, 354 F. Supp. 2d 889, 891-92 (citing *Whitley v. Albers*, 475 U.S. 312 (1986)) (internal quotation marks omitted). If the infliction of pain is purely gratuitous, even the most insignificant injury can violate the Eighth Amendment. *Id.* (citing *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003)). Moore alleges that the "defendants missed the plaintiff's veins" and it "took several attempts" to get the blood drawn. He also alleges that the defendants "forcibly turned plaintiff's hand over and forcibly" drew blood from the top of his hand. (Docket # 1 at 11.) A blood draw itself requires a *de minimus* use of force, and even forcibly turning over Moore's hand would not require the type of force contemplated by the Eighth Amendment. *See Whitley*, 475 U.S. at 320-21 (the amount of force used must be repugnant to the conscience of mankind). Furthermore, the blood draw was not gratuitous; it was done pursuant to a warrant issued in the course of an

---

[4] I note that this claim does raise the question of whether an Eighth Amendment claim is appropriate here at all. "The Eighth Amendment right to be free from cruel and unusual punishment is applicable only to those criminals who are serving a sentence." *Anderson v. Gutschenritter*, 836 F.2d 346, 348 (7th Cir. 1988) (citing *Bailey v. Andrews*, 811 F.2d 366, 373 (7th Cir. 1987)). For pretrial detainees, the due process clause of the Fourteenth Amendment protects them from "cruel and unusual punishment." *Id.* at 348-49 (citing *Ingraham v. Wright*, 430 U.S. 651 (1977)). Moore is neither a prisoner serving a sentence nor a pretrial detainee. *But see Ingraham*, 430 U.S. 651 (finding that while the Eighth Amendment was inapplicable to school children challenging the use of corporeal punishment, a liberty interest was implicated and they were therefore entitled to due process under the Fourteenth Amendment). Assuming Moore's claim would more appropriately be brought under the due process clause of the Fourteenth Amendment, it would be analyzed the same way: under an Eighth Amendment framework. *See Henderson*, 354 F. Supp. 2d at 892-93 (citing *Henderson v. Sheahan*, 196 F.3d 839, 845 n. 2 (7th Cir. 1999)).

8

investigation regarding Moore's suspected drunk driving. Therefore, the defendants are also entitled to judgment on Moore's Eighth Amendment claim.

## REMAINING MOTIONS

Finally, I turn to Moore's remaining three motions: his motion to amend his complaint, his motion to proceed *in forma pauperis*, and his motion for the appointment of counsel.

1. *Motion to Amend Complaint*

Following the filing of the defendants' motion for summary judgment, Moore moved to amend his complaint to add (or substitute) officers Carol Bugalecki and Aaron Schaffer, as well as the Pleasant Prairie Police Department. Generally, a motion for leave to amend a complaint is evaluated under Federal Rule of Civil Procedure 15(a)(2), which provides that courts "should freely give leave when justice so requires." *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). But when a party seeks to amend the pleadings after the time for doing so has passed as determined by the court's scheduling order, as in the present case, a two-step process applies. First, a court is entitled to apply the heightened good cause standard of Rule 16(b)(4), under which the primary consideration for the court is the diligence of the party seeking amendment. *Id.*; *see also Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (explaining that the good cause standard primarily considers the diligence of the party seeking amendment to the pleadings). Then, the court considers whether the proposed amendment should be allowed under Rule 15(a)(2), which reflects a liberal attitude towards the amendment of pleadings. *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir. 2002). Rule 15 also reflects a policy that cases generally should be decided on the merits and not on the basis of

9

technicalities. *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977). Despite these leniencies in the rules, courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, or where the amendment would be futile. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). An amendment is considered "futile" if it would fail to survive a motion to dismiss for failure to state a claim. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

Here, such an amendment would be futile. While substituting the private defendants for state actors would cure Moore's problem of suing plaintiffs not subject to liability under § 1983, it would not solve the factual issues that require judgment be entered in favor of the defendants. That is, even substituting defendants would not change the fact that a reasonable jury could not find, based on the facts, for Moore on either his Fourth Amendment or Eighth Amendment claims. Therefore, his motion to amend his complaint is denied.

2. *Motion to Proceed In Forma Pauperis*

Along with his motion to amend his complaint, Moore filed a motion to proceed *in forma pauperis*. Presumably, he believed that if he amended his complaint, he would have to pay the filing fee again. That is not the case, and he had already been granted *in forma pauperis* status. His motion, therefore, is denied as moot.

3. *Motion to Appoint Counsel*

Finally, Moore moved to have counsel appointed for him. Civil litigants have neither a statutory nor a constitutional right to be represented by counsel in federal court. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992). However, an indigent civil litigant

10

may ask the district court to request an attorney to represent him *pro bono*. *See* 28 U.S.C. § 1915(e)(1) (in proceedings *in forma pauperis*, "[t]he court may request an attorney to represent any person unable to afford counsel"). To be clear, the court's discretionary authority is to recruit a lawyer to represent an indigent civil litigant *pro bono*, but not to make "coercive appointments of counsel." *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). When a party asks the court to recruit a volunteer lawyer in a civil case, the district court must inquire as to whether (1) the indigent party has made a reasonable attempt to obtain counsel or has been effectively precluded from doing so; and (2) the indigent party appears competent to litigate the case herself, taking into account the difficulty of the case. *Id.* at 654. On the second part of this inquiry, the question is not whether a lawyer would present the case more effectively than the *pro se* plaintiff. "[I]f that were the test, 'district judges would be required to request counsel for every indigent litigant.'" *Id.* at 655 (internal citations omitted). Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury herself. *Id.*

In his motion, Moore represents that he contacted two law firms, both of which declined to represent him. While Moore may have met the requirement that he make a reasonable attempt to obtain counsel on his own, he is—and has been—competent to litigate the case himself. His filings are clear and coherent, and he has demonstrated no problem responding appropriately to the defendants' motion(s). Therefore, his motion to appoint counsel is denied.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Defendant's Motion for Summary Judgment (Docket # 35) is **GRANTED**.

**IT IS ALSO ORDERED** that the Plaintiff's Motion for Summary Judgment (Docket # 37) is **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Amend Complaint (Docket # 47) is **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Proceed *In Forma Pauperis* (Docket # 46) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Appoint Counsel (Docket # 48) is **DENIED**.

**FINALLY, IT IS ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 1st day of December, 2016.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge